### JERRY L. GREENBURG *v.* LYDIA J. GREENBURG
### (10182)

NORCOTT, FOTI and LANDAU, Js.

Argued December 3, 1991—decision released February 11, 1992

*Thomas C. C. Sargent,* for the appellant (defendant).

*Mary D. Mix,* for the appellee (plaintiff).

NORCOTT, J. The defendant appeals from the trial court's decision granting the plaintiff the right to determine which colleges the parties' children will attend pursuant to a stipulated separation agreement. The defendant claims that the decision is clearly erroneous and constitutes an impermissible modification of a contract for support. We agree.

The relevant facts are as follows. The parties' marriage was dissolved in January, 1983, at which time a written separation agreement was incorporated by reference into the decree of dissolution. The parties first wrote the agreement and then gave it to an attorney who put it into legal form and language. One provision pertained to the college expenses of the parties' children. That provision states: "The Husband shall be responsible for the continued education of the children until they have graduated from college or have reached the age of majority." The plaintiff understood this to mean he would make the educational decisions, choose the schools the children would attend and pay tuition. In dissolving the marriage, the court awarded the parties joint custody of the minor children, David, Michael and Jennifer, who were to live with the plaintiff.

At the time of the agreement, the parties were experiencing extreme financial difficulties. Neither contemplated sending the children to private schools. The plaintiff wanted the children to attend public institutions of higher learning. The defendant's daughter, Susan, whom the plaintiff had legally adopted, was attending Southern Connecticut State University at this time. Susan lived either at home or in a rooming house with friends and incurred minimal expenses. The plaintiff had decided which college Susan would attend after discussing the matter with her.

In 1987, with the help of counsel, the parties modified their separation agreement in a written stipulation that was subsequently approved by the court. One provision that was added permitted the plaintiff to take tax exemptions for Jennifer and David as long as he paid college tuition or child support.[1] The education pro-

[1] Paragraph 8 of the modified agreement provides: "For so long as the Plaintiff pays college tuition or child support he will be entitled to the exemption for Jennifer and David. The Defendant shall be entitled to the exemption for Michael until the year in which he commences college. The Defendant will sign any documents necessary to facilitate the foregoing."

vision was modified to state, "The Plaintiff shall be responsible for the expenses of up to four years of college for each of the children, but said obligation shall not continue past each child's reaching the age of twenty-five."

The defendant understands the modified education provision to mean that the plaintiff is to pay the full college expenses of each child for four years of college until the age of twenty-five. The plaintiff believes the provision means he is to pay tuition and make all the educational decisions after discussing matters with the defendant and the children. Because the defendant gained physical custody of the children at this time, the plaintiff's primary concern with respect to the 1987 modification was to guarantee his visitation rights. Neither party devoted much time to the review of the education provision.[2]

Relations among the family members also began to deteriorate rapidly during this time. In early 1987, the plaintiff, who had remarried, took steps to purchase a new home. This led to conflict with the defendant and the children about whether she could enter the home to visit the children while they were in his custody. In August, 1987, the parties' eldest son, David, matriculated at Green Mountain College, a private school in Poultney, Vermont, which he attended for two years. David was having behavioral problems at that time. In order to allow his son to reorganize his life in a new environment, the plaintiff altered his longstanding commitment to public education and permitted David to attend the private college. The plaintiff paid all costs involved, which totaled about $10,500 each school year.

Together, the plaintiff and David made the decision for David to attend Green Mountain. The plaintiff

---

[2] The plaintiff testified that during discussions about the 1987 modification, "[t]hirty seconds" was devoted to the education provision.

claims that the defendant was not involved in the decision. The defendant, however, objected to David's attending that school and asserts that she was involved in the decision, but only minimally because she was not as well informed as the plaintiff about colleges. After David finished second and first in his class in his two years at Green Mountain, he sought a more challenging academic environment and was admitted to Boston University. Although the plaintiff disapproved, claiming he could not afford the higher costs involved, David transferred to Boston University for his junior and senior years, with the defendant paying the expenses.

In the summer of 1989, the plaintiff and the parties' younger son, Michael, discussed the young man's desire to attend Berklee College of Music in Boston. The plaintiff objected strongly because he did not consider Berklee to be a college as he understood the word, and because of his longstanding preference for less expensive, state supported schools. The defendant, however, approved of Michael's choice, and he subsequently matriculated in the fall of 1990. The plaintiff has offered to pay part of the costs for David's education at Boston University, but has refused to pay anything for Michael.

In June, 1990, the defendant filed with a state trial referee sitting as the trial court, *Margaret C. Driscoll,* state trial referee, a motion for construction, a motion for contempt and a motion for counsel fees.[3] The motion for construction requested the court to interpret in the 1987 education provision the phrase "for the expenses of up to four years of college for each of the children"

---

[3] This appeal concerns only the motion for construction, which we understand to be, in essence, a motion for articulation, since a motion for construction does not exist under our rules of practice. We do not consider the motions for contempt or counsel fees, which were not ruled upon by the trial court.

so as to determine "the exact extent of the obligation in monetary terms of the plaintiff for each applicable year of college education for each of the children of the parties."

After a hearing in August, 1990, the court in April, 1991, ruled that the plaintiff has the right to make the ultimate decision as to what colleges the children attend. The court further determined that expenses of the children's college educations "include living expenses, travel expenses to and from the school as well as tuition and books and materials required by the courses the child is taking." Finally, the court declared that the defendant was responsible for the expenses of the children when they are home from school, as long as she is receiving child support.

On appeal, the defendant's sole challenge is to the trial court's determination that the plaintiff has the right to determine which colleges the children will attend. She argues that, in light of the wording of the modified education provision, the trial court's finding is clearly erroneous. We agree.

When a judgment incorporates a separation agreement in accordance with a stipulation of the parties, it is to be regarded and construed as a contract. *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990); *Zivic* v. *Zivic,* 26 Conn. App. 5, 7, 596 A.2d 475 (1991); *Albrecht* v. *Albrecht,* 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989); *Kolkmeyer* v. *Kolkmeyer,* 18 Conn. App. 336, 340, 558 A.2d 253 (1989). Construction of such an agreement is an issue of fact to be resolved by the trial court as the trier of fact. *Barnard* v. *Barnard,* supra. We review such findings, as we do other findings of fact, under the very limited " 'clearly erroneous' " standard. *Zivic* v. *Zivic,* supra, 7–8; *DeMatteo* v. *DeMatteo,* 21 Conn. App. 582, 585, 575 A.2d 243, cert. denied,

216 Conn. 802, 577 A.2d 715 (1990); *Albrecht* v. *Albrecht,* supra; *Kolkmeyer* v. *Kolkmeyer,* supra. The ultimate issue for an appellate court is whether the trial court could reasonably have concluded as it did. *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 584, 362 A.2d 835 (1975); *Gallagher* v. *Gallagher,* 11 Conn. App. 509, 514, 528 A.2d 379 (1987). In that regard, every presumption is given in favor of the correctness of the trial court's action. *Gallo* v. *Gallo,* 184 Conn. 36, 44, 440 A.2d 782 (1981); *Gallagher* v. *Gallagher,* supra.

In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together. *Barnard* v. *Barnard,* supra; 17 Am. Jur. 2d, Contracts § 258. The contract must be construed to give effect to the intent of the contracting parties. *Barnard* v. *Barnard,* supra; *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983). " 'This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained.' " *Kolkmeyer* v. *Kolkmeyer,* supra, quoting *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 500–501, 519 A.2d 1237 (1987). "[I]ntent . . . is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Sturman* v. *Socha,* supra; *Marcus* v. *Marcus,* 175 Conn. 138, 141–42, 394 A.2d 727 (1978); *Baldwin* v. *Baldwin,* 19 Conn. App. 420, 422, 562 A.2d 581 (1989). When the language is clear and unambiguous, however, the contract is to be given effect according to its terms. *Barnard* v. *Barnard,* supra, 110. In such a case, no room exists for construction. *Gino's Pizza of East Hartford, Inc.* v. *Kaplan,* 193 Conn. 135, 138, 475 A.2d 305 (1984).

With these principles in mind, we turn to the trial court's interpretation of the education provision. From our review of the record, we conclude that it was improper for the trial court to determine that the plaintiff has the ultimate right to select the colleges the children attend.

Initially, we note that in *Albrecht* v. *Albrecht,* supra, the trial court found that a separation agreement requiring the parties to pay their children's college expenses permitted one of the parties a one year delay in making such payments. Id., 160. The agreement provided in pertinent part: " 'the husband and wife agree to be responsible for the payment of the children's college expenses in direct proportion to their respective adjusted gross incomes as reflected on their income tax returns at the time such expenses are incurred and after deducting the first $25,000 from such adjusted gross income.' " Id., 151–52. This court held that in determining the parties' obligations under the agreement, the trial court "was required to rely on the relevant provisions of the agreement and was not free to add its own terms  . . . ." Id., 159–60. This court determined that because the language of the educational provision did not authorize a one year delay in making the payments, it was improper for the trial court "to have grafted such a provision onto the agreement." Id., 160.

The same rationale is applicable here. The education provision in the parties' separation agreement clearly and unequivocally imposes on the plaintiff an obligation to pay for four years of college expenses for each child until age twenty-five. It does not grant him sole decision making authority with respect to college selection. Such power is neither expressed nor implied in the parties' agreement, and thus cannot be added to it.

Further, our well established principles of contract interpretation make clear that the trial court could not reasonably have concluded that the plaintiff has the right to decide which colleges the children attend. *Pasquariello* v. *Pasquariello,* supra; *Gallagher* v. *Gallagher,* supra. A fair and reasonable construction of the language at issue, in accord with its ordinary meaning, does not ineluctably lead to the conclusion that the parties intended the plaintiff exclusively to decide which colleges the children attend. *Sturman* v. *Socha,* supra; *Marcus* v. *Marcus,* supra; *Baldwin* v. *Baldwin,* supra. A court simply cannot "disregard the words used by the parties or revise, add to, or create a new agreement." *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 374, 321 A.2d 444 (1973). "A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument." *Texaco, Inc.* v. *Rogow,* 150 Conn. 401, 408, 190 A.2d 48 (1963).

Finally, we note that the testimony shows that the plaintiff was acutely aware of his precarious financial situation at all times during and after his marriage to the defendant. He had the opportunity, not once but twice, in 1983 and in 1987, to insert appropriate language into the agreement to ensure that he would have the legal right to choose the children's colleges and thus to gain a measure of control over his financial future. Although he could have incorporated such language, the indisputable fact is that he did not do so. A court cannot change or vary the construction and legal effect of a contract because the terms are inconvenient or even unreasonable. *Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 440, 45 A.2d 120 (1945). It is hornbook law that courts do not rewrite contracts for parties. *Collins* v. *Sears, Roebuck & Co.,* supra, 373–74. " '[A]lthough one may sympathize with the position in which the plaintiff finds himself the fact remains that by the sepa-

ration agreement he made his bed' " and now must lie in it. *McAnerney* v. *McAnerney,* 165 Conn. 277, 287, 334 A.2d 437 (1973); *Klein* v. *Klein,* 3 Conn. App. 421, 423, 488 A.2d 1288 (1985).[4] We therefore conclude that the trial court's ruling that the plaintiff has the sole right to decide which colleges the children attend is clearly erroneous.

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[4] The plaintiff also argues that his claimed right to select the children's colleges finds support when the educational provision is read in conjunction with the provision granting him a tax exemption for Jennifer and David as long as he pays their tuition or child support. This argument, however, merely assumes its conclusion. We see no necessary link between payment of tuition or child support and a right to select the children's colleges.